Mia Farber (SBN 131467)
mia.farber@jacksonlewis.com
Nima Darouian (SBN 271367)
nima.darouian@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendant
EQUINOX HOLDINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE PORTER and JOSHUA TOLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EQUINOX HOLDINGS, INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441, 1446** |

TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant EQUINOX HOLDINGS, INC. hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1367, 1441(a)-(b), 1446, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Alameda.

1. On March 1, 2019, Plaintiffs RENEE PORTER and JOSHUA TOLIN ("Plaintiffs") filed a civil complaint against Defendant EQUINOX HOLDINGS, INC. ("Equinox" or "Defendant"), and DOES 1-50, inclusive, in the Superior Court of the State of California in and for the County of Alameda ("Superior Court") entitled *Renee Porter et al. v. Equinox Holdings, Inc., et al*, Case No. RG19009052, which sets forth a single cause of action for Violation of Private Attorneys General Act ("PAGA"). Plaintiffs allege (and Defendant denies) that: (i) they were not paid all wages earned for all labor performed each pay period; (ii) they were not paid their earned minimum wages for all hours worked; (iii) they were not paid their earned overtime wages for all overtime hours worked; (iv) they were not provided timely, compliant meal periods; (v) they were not provided timely, compliant rest periods; (vi) they were not paid for rest and recovery periods and other nonproductive time separate from any piece-rate compensation; (vii) they were not furnished compliant wage statements; (viii) Defendant failed to maintain compliant payroll records; and (ix) Defendant failed to pay unpaid and premium wages due upon termination. A copy of the Summons, Complaint and other related court documents is attached as **Exhibit "A."**

2. On March 5, 2019, the Superior Court issued a Notice of Hearing, which set a Complex Determination Hearing on April 10, 2019 and a Case Management Conference on May 15, 2019. A true and correct copy of this notice is attached as **Exhibit "B."**

3. On March 29, 2019, Plaintiffs filed a First Amended Complaint ("FAC") and Summons with the Superior Court. A true and correct copy of the FAC and Summons is attached as **Exhibit "C."**

4. On April 10, 2019, the Superior Court issued an Order designating the matter as complex. A true and correct copy of the Superior Court's Order is attached as **Exhibit "D."**

5. On April 11, 2019, Plaintiffs filed a Proof of Service indicating that Defendant first received Plaintiffs' FAC, Complaint, and Summons on April 4, 2019. A true and correct copy of the proof of service Plaintiff filed is attached as **Exhibit "E."**

6. On May 3, 2019, Defendant filed an Answer to Plaintiffs' FAC. A true and correct copy of Defendant's Answer is attached as **Exhibit "F."**

7. Plaintiffs previously filed a civil action against Defendant and Equinox Fitness Sepulveda, Inc. alleging the same primary rights, to wit: (i) failure to pay all wages earned; (ii) failure to pay minimum

wage; (iii) failure to pay overtime wages; (iv) failure to provide meal periods; (v) failure to provide rest periods; (vi) failure to pay for rest and recovery periods; (vii) failure to furnish accurate wage statements; (viii) failure to maintain required records; (ix) failure to pay earned wages upon termination; and (x) unfair competition in violation of Business and Professions Code section 17200. *See Renee Porter et al. v. Equinox Holdings, Inc. et al.,* Los Angeles Superior Court Case No. 18STCV03163. Defendant removed this lawsuit to the United States District Court for the Central District of California ("Central District") on January 9, 2019. *See* Case No. 2:19-cv-00203-R-SS, ECF 6. On January 10, 2019, the Honorable Manuel L. Real was assigned to the matter before the Central District. *Id.*, ECF 7. Twelve (12) days after Judge Real's assignment, Plaintiffs filed a notice of voluntary dismissal without prejudice as to the matter pending in the Central District. *Id.,* ECF 14.

## TIMELINESS OF REMOVAL

8. This Notice of Removal has been filed within thirty (30) days after Defendant first received a copy of Plaintiffs' FAC, Complaint, and Summons upon which this action is based. This Notice of Removal is therefore filed within the time period provided by 28 U.S.C. § 1446(b).

9. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting documents will be promptly served on Plaintiffs' counsel and filed with the Clerk of the Alameda County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be satisfied.

## DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. § 1332

10. The Court has subject matter jurisdiction over this case on the basis of 28 U.S.C §§ 1332 and 1441, because this is a civil action between citizens of different States, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.

11. Diversity jurisdiction exists where there is diversity of citizenship between the parties at the time the lawsuit is filed. *See Grupo Dataflux v. Atlas Global Group,* 541 U.S. 567, 571 (2004).

12. Citizenship of the parties in this Action is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

13. For diversity jurisdiction purposes, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *see also Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).

"A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.* (C.D.Cal. June 12, 2017, No. CV 17-02871-BRO (SSx)) 2017 U.S.Dist.LEXIS 90131, at *10.) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

14. Plaintiffs allege that they are each "a resident of Los Angeles County, California." *See* FAC ¶¶ 6-7. Furthermore, Plaintiffs allege that they were each "employed by Defendants." *Id.* In addition, Defendant is informed and believes Plaintiffs are residents and citizens of the state of California. *See* Declaration of Emerson Figueroa in Support of Defendant's Notice of Removal ("Figueroa Decl."), ¶¶ 5-6. Accordingly, Plaintiffs are citizens of the State of California within the meaning of 28 U.S.C. § 1332(a). *See e.g. Zavala v. Deutsche Bank Tr. Co. Ams.*, No. C 13-1040 LB, 2013 U.S. Dist. LEXIS 96719, at *9 (N.D. Cal. July 10, 2013) ("A party's residence is 'prima facie' evidence of domicile. In the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes.") (internal citations omitted).

15. A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

16. Defendant, both at the time this action was commenced and at the time of filing of these removal papers, is either a citizen of the State of Delaware or the State of New York within the meaning of Section 1332(c)(1), because it was at all times a corporation formed under the laws of the State of Delaware, with its principal place of business and corporate headquarters located in New York, New York, where Defendant conducts a predominance of its corporate and business activities. Moreover,

Case No.:     4     NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441, 1446

Defendant's high-level corporate officers are located at its headquarters in New York, New York. *Hertz Corp. v. Friend*, 599 U.S. 77, 130 S.Ct. 1181 (2010). See Declaration of Neta Levanon in support of Defendant's Notice of Removal ("Levanon Decl."), ¶ 2.

17. Defendant's Board of Directors typically meets at its headquarters in New York, New York. *Id.* ¶ 3; *see also, Hertz Corp.,* 130 S. Ct. at 1192 (holding that a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters--provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."). Applying the "nerve center" test, New York is the state where Defendant's primary executive, administrative, financial and management functions are conducted and where the high-level officers direct, control, and coordinate the corporation's activities — *i.e.*, the principle place of business of Defendant. *See generally* Levanon Decl. ¶¶ 2-3.

18. Because Plaintiffs are citizens of California, while Defendant is a citizen of Delaware or New York, this action is one between "citizens of different states" in accordance with Section 1332(a).

19. The presence of Doe defendants has no bearing on the diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

## AMOUNT IN CONTROVERSY

20. This action meets the amount in controversy requirement for removal based on traditional diversity jurisdiction. Specifically, 28 U.S.C. § 1332(a) authorizes the removal of cases in which, among other factors addressed above, the amount in controversy exceeds the sum or value of $75,000,[1] exclusive of interest and costs. Where the plaintiff's complaint is silent to the amount of damages claimed, the removing defendant need only establish that it is more probable than not that the plaintiff's claim exceeds the jurisdictional minimum. *Guglielmino v. McKee Foods, Corp.,* 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.,* 95 F.3d 856, 860-61 (9th Cir. 1996). That is, a plaintiff's failure to specify in the complaint the total amount of damages she seeks does not deprive this Court of jurisdiction.

---

[1] By demonstrating the basis for the District Court's original jurisdiction under the diversity statute, Defendant in no way concedes that Plaintiffs' claims are valid or that they are entitled to recover anything from Defendant.

*See, e.g., White v. J.C. Penney Life Ins. Co.*, 861 F.Supp. 25, 26 (S.D. W.Va. 1994) (a defendant may remove a suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff could avoid removal simply by declining . . . to place a specific dollar value upon its claim.").

21. In assessing diversity jurisdiction in a multi-plaintiff action, if one plaintiff's claim satisfies the $75,000 threshold, the district court may exercise supplemental jurisdiction over claims by other plaintiffs in lesser amounts, provided all claims arise out of the same Article III case or controversy. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558-59, 125 S. Ct. 2611, 2620 (2005) ("The single question before us, therefore, is whether a diversity case in which the claims of some plaintiffs satisfy the amount-in-controversy requirement, but the claims of other plaintiffs do not, presents a 'civil action of which the district courts have original jurisdiction.' If the answer is yes, § 1367(a) confers supplemental jurisdiction over all claims, including those that do not independently satisfy the amount-in-controversy requirement, if the claims are part of the same Article III case or controversy.… We now conclude the answer must be yes."); *see also Geerlof v. C&S Wholesale Grocers, Inc.*, No. 2:13-cv-02175-MCE-KJN, 2014 U.S. Dist. LEXIS 51428, at *20 (E.D. Cal. Apr. 11, 2014) ("Should at least one Plaintiff meet the $75,000 requirement, the Court may exercise its supplemental jurisdiction over the claims of the remaining Plaintiffs."); *Alcatel Lucent United States, Inc. v. Dugdale Communs., Inc.*, No. CV 09-2140 PSG (JCx), 2010 U.S. Dist. LEXIS 22226, at *14-15 (C.D. Cal. Mar. 5, 2010) ("In an action involving multiple plaintiffs, a federal court may exercise supplemental jurisdiction over a co-plaintiff's claims that fail to meet the jurisdictional amount in controversy if (1) at least one plaintiff satisfies the amount in controversy, (2) the other elements of diversity jurisdiction are satisfied, and (3) the plaintiff's claims are part of the same 'case or controversy.'").

22. Here, the jurisdictional amount is satisfied because Plaintiff Renee Porter's ("Porter") claims exceed the sum or value of $75,000, and because all of the plaintiffs' claims are part of the same Article III case or controversy. *See Alcatel Lucent*, 2010 U.S. Dist. LEXIS 22226, at *16 ("In order to determine whether the claims are part of the same case or controversy, the Court will examine whether they involve a 'common nucleus of operative fact.'"); *see also* FAC ¶ 2 ("Plaintiffs and Other Aggrieved Employees are or were employed by Defendants as non-exempt employees in California during the

relevant PAGA period and were denied benefits and protections required under the California Labor Code and other statutes and regulations applicable to employees in the State of California.").

23. Porter seeks "all penalties and amounts due pursuant to PAGA, including without limitation… California Labor Code section[] 558." *See* FAC, Prayer For Relief*; see also Urbino v. Orkin Services of California, Inc.*, 726 F.3d 119 (9th Cir. 2013) (PAGA penalties attributable to the plaintiff's individual claims may be considered when determining amount in controversy).

24. Under PAGA, the amount of civil penalties recoverable for violation of a particular Labor Code section will be either the civil penalty specified for that particular provision or "default" penalties. If a civil penalty is not specifically provided for by statute, the default penalties under PAGA are "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred ($200) dollars for each aggrieved employee per pay period for each subsequent violation." Cal. Lab. Code § 2699(f)(2).

25. Under Labor Code section 558, civil penalties may be awarded for alleged violations of "any provision regulating hours and day of work." The penalties available are as follows: (i) for any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages; and (ii) for each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. *See* Cal. Lab. Code § 558.

26. Porter seeks the maximum civil penalties allowed in her FAC. *See* FAC ¶ 33 ("For each violation, Plaintiffs, on behalf of themselves and other current and former employees of Defendants, seek any and all applicable legal penalties and amounts due[.]").

27. Porter was formerly employed by Defendant from 2014 through April 2019. *See* Figueroa Decl. ¶ 7. Throughout her employment, Porter was paid on a biweekly basis. *Id.* There were approximately 114 pay periods from the commencement of Porter's employment to the time of her resignation and/or the time of removal (*i.e.* December 19, 2014 – April 30, 2019 or May 3, 2019, respectively). *Id.*

28. Porter's allegations do not limit the pay periods at issue to any one-year period. *See*

*generally* FAC ¶¶ 20-27.  Further, Porter's FAC contains no qualifying language limiting the relief sought to Labor Code violations for any particular period of time.  *See Flores v. Marriott Resorts Hosp. Corp.*, No. CV 18-8012 JVS (JPRx), 2019 U.S. Dist. LEXIS 6604, at *10 (C.D. Cal. Jan. 7, 2019) (a sentence that states "'[d]uring the . . . one-year period preceding the filing of the initial complaint in this action, Defendants violated' the relevant Labor Code sections" does not expressly limit alleged violations to the one-year prior to the filing of the action; instead "it merely affirmatively alleges that violations indeed occurred in that period.").  Therefore, Porter's FAC "as alleged does not limit the amount in controversy to the one year prior to filing this action."  *Id.; see also Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("[J]ust because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.  Further, if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction."); *Lara v. Trimac Transp. Servs. (Western)*, No. CV 10-4280-GHK (JCx), 2010 U.S. Dist. LEXIS 82420, at *8-9 (C.D. Cal. Aug. 6, 2010) ("affirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum."); *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM (JCGx), 2012 U.S. Dist. LEXIS 86975, at *30 (C.D. Cal. June 22, 2012) ("While [plaintiff] is correct that the statute of limitations makes it doubtful that class members can recover § 1197.1 penalties for a period of time longer than a year, the fact that Towne Park may assert a limitations defense does not limit the relief sought in the complaint.").

29.    Moreover, Porter contends that she provided notice of the specific provisions of the California Labor Code alleged to have been violated on or about October 25, 2018.  *See* FAC ¶ 35.  Thus, solely for the purposes of this removal, any violations occurring after October 25, 2018 constitute "subsequent violations" subject to the heightened penalty for purposes of calculating the amount in controversy.  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209, 78 Cal. Rptr. 3d 572, 614 (2008) ("[A]fter the employer has learned its conduct violates the Labor Code, the employer is on notice that any future violations will be punished just the same as violations that are willful or intentional[.]"); *see also Robinson v. Open Top Sightseeing S.F., LLC*, No. 14-cv-00852-PJH, 2018 U.S. Dist. LEXIS

24556, at *55 (N.D. Cal. Feb. 14, 2018) ("federal courts in this Circuit frequently rely on this holding to interpret other sections of the Labor Code."); *Van Steenhuyse v. UBS Fin. Servs.*, 317 F. Supp. 3d 1062, 1068 (N.D. Cal. 2018) ("[P]laintiff served his LWDA notice on December 22, 2017. There were 24 pay periods between December 22, 2016 and December 22, 2017 and 7 pay periods between December 22, 2017, and the date of removal.  Thus, the 24 pay periods before the LWDA notice should therefore be penalized at the lower 'initial' violation level.") Here, there were approximately fourteen (14) pay periods from October 25, 2018 to the time of removal.  *See* Figueroa Decl. ¶ 7.

30. Without admitting Porter could recover any damages, and/or that her requested civil or statutory penalties are appropriately alleged, the following is a summary of just several of Porter's alleged claims:

a. **Porter's Individual PAGA Penalties for Failure to Pay All Wages Earned:** Porter alleges that she was "not paid for all wages earned and labor performed each pay period." FAC ¶ 20 (emphasis added).  Based on the fact that there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual PAGA penalties for unpaid regular wages is $12,800 (*i.e.* $100 for the first 100 violations, $200 for the 14 subsequent violations).

b. **Porter's Section 558 Damages for Failure to Pay All Wages Earned:** In light of Porter's allegation that she was not paid for all wages earned and labor performed for "each pay period" (FAC ¶ 20; emphasis added) and the fact that there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual Section 558 damages for failure to pay regular wages is $6,400 (*i.e.* $50 for the first 100 violations, $100 for the 14 subsequent violations).

c. **Porter's Individual PAGA Penalties for Failure to Pay Earned Minimum Wages:** Porter alleges that she was not paid for all wages earned and labor performed "each pay period," and further alleges she was not paid her earned minimum wages for "all hours worked." *See* FAC ¶¶ 20, 21 (emphasis added).  Based on the fact that there were 100

pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual PAGA penalties for failure to pay earned minimum wages is $12,800 (*i.e.* $100 for the first 100 violations, $200 for the 14 subsequent violations).

d. **Porter's Section 558 Damages for Failure to Pay Earned Minimum Wages:** Porter alleges that she was not paid for all wages earned and labor performed "<u>each pay period</u>," and further alleges she was not paid her earned minimum wages for "all hours worked." *See* FAC ¶¶ 20, 21 (emphasis added). Because there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual Section 558 damages for failure to pay earned minimum wages is $6,400 (*i.e.* $50 for the first 100 violations, $100 for the 14 subsequent violations).

e. **Porter's Individual PAGA Penalties for Failure to Pay Overtime:** Porter alleges that she was not paid for all wages earned and labor performed "<u>each pay period</u>," and further alleges she was not paid her earned overtimes wages for "all overtime hours worked," including for labor that was performed "off the clock." *See* FAC ¶¶ 20, 22 (emphasis added). Based on the fact that there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual PAGA penalties for failure to pay overtime is $12,800 (*i.e.* $100 for the first 100 violations, $200 for the 14 subsequent violations).

f. **Porter's Section 558 Damages for Failure to Pay Overtime:** Porter alleges that she was not paid for all wages earned and labor performed "<u>each pay period</u>," and further alleges she was not paid her earned overtimes wages for "all overtime hours worked," including for labor that was performed "off the clock." *See* FAC ¶¶ 20, 22 (emphasis added). Because there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual Section 558 damages for failure to pay overtime is $6,400 (*i.e.* $50 for the first 100 violations, $100 for the 14 subsequent violations).

Case No.:    10    NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441, 1446

g. **Porter's Individual PAGA Penalties for Failure to Pay for Rest and Recovery Periods and Other Nonproductive Time Separate from any Piece-Rate Compensation:** Porter alleges that she was not paid for all wages earned and labor performed "<u>each pay period</u>," and further alleges she was not paid for rest and recovery periods and other nonproductive time separate from any piece-rate compensation. *See* FAC ¶¶ 20, 25 (emphasis added). Based on the fact that there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual PAGA penalties for failure to pay rest and recovery periods and other nonproductive time separate from any piece-rate compensation is $12,800 (*i.e.* $100 for the first 100 violations, $200 for the 14 subsequent violations).

h. **Plaintiff's Section 558 Damages for Failure to Pay for Rest and Recovery Periods and Other Nonproductive Time Separate from any Piece-Rate Compensation:** Porter alleges that she was not paid all wages earned and labor performed for "<u>each pay period</u>" (FAC ¶ 20; emphasis added) and that she was not paid for rest and recovery periods and other nonproductive time separate from any piece-rate compensation. (FAC ¶ 25). Because there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual Section 558 damages for failure to pay rest and recovery periods and other nonproductive time separate from any piece-rate compensation is $6,400 (*i.e.* $50 for the first 100 violations, $100 for the 14 subsequent violations).

i. **Porter's Individual PAGA Penalties for Failure to Provide Accurate Itemized Wage Statements:** Porter alleges that she was not paid for all wages earned and labor performed "<u>each pay period</u>," and that as a result, "Defendant failed to furnish [Porter] compliant wage statements that accurately reflected, *inter alia*, hours worked, overtime, and meal and rest premiums." *See* FAC ¶¶ 20, 26 (emphasis added). Based on the fact that there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on

Porter's individual PAGA penalties for failure to provide accurate itemized wage statements is $39,000 (*i.e.* $250 for the first 100 violations, $1,000 for the 14 subsequent violations). *See Raines v. Coastal Pac. Food Distribs., Inc.*, 23 Cal. App. 5th 667, 680, 234 Cal. Rptr. 3d 1, 11 (2018) ("A PAGA claim for a violation of section 226(a) seeks to recover civil penalties. Those civil penalties are provided for in section 226.3."); *see also Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal. May 9, 2018) (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued" may have been noncompliant).

j. **Porter's Section 558 Damages for Failure to Provide Accurate Itemized Wage Statements:** Porter alleges that she was not paid for all wages earned and labor performed "<u>each pay period</u>," and that as a result, "Defendant failed to furnish [Porter] compliant wage statements that accurately reflected, *inter alia*, hours worked, overtime, and meal and rest premiums." *See* FAC ¶¶ 20, 26 (emphasis added). Based on the fact that there were 100 pay periods prior to Porter's LWDA notice, and 14 pay periods subsequent to Porter's LWDA notice, Defendant's potential liability on Porter's individual Section 558 damages for failure to provide accurate itemized wage statements is $6,400 (*i.e.* $50 for the first 100 violations, $100 for the 14 subsequent violations).

31.   Accordingly, based on Porter's claims for (i) failure to pay all wages earned; (ii) failure to pay earned minimum wages; (iii) failure to pay overtime wages; (iv) failure to pay rest and recovery periods and other nonproductive time separate from any piece-rate compensation; and (v) failure to furnish accurate wage statements, the amount in controversy from her alleged PAGA penalties and Section 558 damages is at least $122,200.00. *See, e.g., Patel v. Nike Retail Servs.*, 58 F. Supp. 3d 1032, 1048 (N.D. Cal. 2014) ("the entire amount of PAGA penalties attributable to [plaintiff's] claims count towards the amount in controversy."); *see also Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). Notably, this estimate does not include Porter's claims for, *inter*

*alia*, failure to provide timely and compliant meal periods, failure to provide timely and compliant rest periods, and failure to maintain compliant payroll records, all of which further increase the amount in controversy.

32.  In addition, Porter alleges that she is entitled to recover her attorneys' fees. FAC ¶ 28 ("Plaintiffs also seek reasonable attorneys' fees pursuant to California Labor Code sections 2699(g)(1), 218.5 and any other applicable sections."). Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction. *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Indeed, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas*, 2018 U.S. Dist. LEXIS 78510, at *32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy."). Moreover, the Court may examine the nature of the action and the relief sought and take judicial notice of attorneys' fee awards in similar cases. *See, e.g., Rutledge v. Healthport Techs., LLC*, No. 16-cv-06920-VC, 2017 U.S. Dist. LEXIS 26453, at *4 n.3 (N.D. Cal. Feb. 24, 2017). Further, district courts in the Ninth Circuit have acknowledged that "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case." *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 U.S. Dist. LEXIS 47144, at *11 (N.D. Cal. Apr. 15, 2010); *see also Cagle v. C&S Wholesale Grocers, Inc.*, No. 2:13-cv-02134-MCE-KJN, 2014 U.S. Dist. LEXIS 21571, at *30 (E.D. Cal. Feb. 18, 2014). Accordingly, because Porter is seeking attorneys' fees in this action, those fees would also increase the amount in controversy.

33.  In summary, the amount in controversy requirement for traditional diversity jurisdiction is easily satisfied. Without considering several of Porter's claims, including her claim for attorneys' fees, Porter's individual claims place in controversy an estimated amount of $122,200.00, and thus pursuant to traditional diversity jurisdiction, the amount in controversy requirement is satisfied for this matter.

34. Notwithstanding the foregoing, Defendant nevertheless disputes that Porter – or any other plaintiff or "aggrieved employee" – is entitled to recover anything by virtue of this action.

**VENUE**

35. This action has been removed to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441(a) and 1391(c) because the state action was filed in this district. However, for the convenience of parties and witnesses, and in the interest of justice, the appropriate venue for this action is the Central District. *See* 28 U.S.C. § 1404; *see also* Case No. 2:19-cv-00203-R-SS, ECF 6-1, ¶ 6 (Plaintiffs representing in their previously filed action that "[v]enue of this action in the County of Los Angeles is proper pursuant to Code of Civil Procedure §§ 395(a) and 395.5, in that many of the wrongful acts complained of herein occurred in Los Angeles County, and Defendants are found, maintain offices in, and/or transact business in Los Angeles County").[2]

WHEREFORE, Defendant removes the above-entitled action currently pending in the Superior Court of the State of California for the County of Alameda to this Court.

Respectfully submitted,

Dated: May 3, 2019                JACKSON LEWIS P.C.

By:    */s/ Nima Darouian*
       Mia Farber
       Nima Darouian
       Attorneys for Defendant
       EQUINOX HOLDINGS, INC.

4817-7356-2518, v. 1

---

[2] Defendant intends to file a motion to transfer venue pursuant to 28 U.S.C. § 1404.